# ORIGINAL

FILED IN.
U.S.D.C

DEC 05 2007

JAMES N. HATTEN, CLERK
By: ___ D. ___ Deputy Clerk

-CAM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MY VIET LE,
    Plaintiff

vs.

VALENTINE & KEBARTAS, INC.,
    Defendant.

)
)
)
) CIVIL ACTION
) FILE NO.
) 1'07-cv-3017
)
)
) **JURY TRIAL DEMANDED**
)

## COMPLAINT

Plaintiff My Viet Le, by and through counsel, brings this action against

Defendant Valentine & Kebartas, Inc. (hereinafter "V&K") on the grounds and in

the amounts set forth herein.

### I. PRELIMINARY STATEMENT

1.    This action seeks redress for the Defendant's violations of the Fair Debt

    Collection Practices Act (hereinafter "FDCPA") 15 U.S.C. § 1692, *et seq.* in

    connection with the collection of a consumer debt.

### II. PARTIES

2.    Plaintiff My Viet Le is a natural person and a "consumer" as defined by the

    FDCPA, 15 U.S.C. § 1692a(3).

3.    Defendant V&K is a Massachusetts corporation engaged in the business of

    collecting debts in the state of Georgia.

4.  Defendant V&K may be served with the Summons and Complaint at 15 Union Street, Lawrence, Massachusetts 01840.

5.  Defendant V&K is engaged in the collection of debts from consumers using the mail and telephone.

6.  Defendant V&K regularly attempts to collect consumer debts alleged to be due to another.

7.  Defendant V&K is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

### III.  JURISDICTION AND VENUE

8.  Jurisdiction is conferred on this Court by FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

9.  Venue in this District is proper in that the Defendant transacts business here and the conduct complained of occurred here.

### IV.  STATUTORY STRUCTURE

10. The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692.

11.   Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a(3).

12.   Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

13.   Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a(6).

14.   Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damage sustained; statutory damages up to $1,000; attorneys' fees as determined by the Court and costs of this action. 15 U.S.C. § 1692k.

## V. FACTUAL ALLEGATIONS

15.   Defendant V&K was engaged in the collection of a consumer purpose credit card account opened by the Plaintiff with Bank One, N.A. for her personal use.

16.   Upon information and belief, the Plaintiff's Bank One, N.A. credit card account became a Chase Manhattan Bank USA, N.A. credit card account.

17.   Upon information and belief, the Plaintiff's account went into default in March 2006.

18.   Upon information and belief, Chase Manhattan Bank USA, N.A. assigned the account to V&K for collection.

19.   On or about November 6, 2007, Defendant V&K sent written correspondence to the Plaintiff regarding the account in an attempt to collect the debt.

20.   On November 21, 2007, Defendant V&K's representative telephoned the Plaintiff in an attempt to collect the debt.

21.   On November 21, 2007, Defendant V&K's representative asked the Plaintiff has the sheriff been to your house today.

22.   On November 21, 2007, Defendant V&K's representative told the Plaintiff that he sent the sheriff to serve her today.

23.   On November 21, 2007, Defendant V&K's representative asked the Plaintiff if she wanted to resolve this outside of court.

24.   On November 21, 2007, Plaintiff asked Defendant V&K's representative who he was.

25.   On November 21, 2007, On November 21, 2007, Defendant V&K's representative told the Plaintiff that his name was Jim Francis and he was the case manager in the legal department at Valentine & Kebartas.

26.   On November 21, 2007, Defendant V&K's representative told the Plaintiff that they were representing Chase Bank.

27.   On November 21, 2007, Plaintiff asked Defendant V&K's representative if they were sending a sheriff to her house that day.

28.   On November 21, 2007, Defendant V&K's representative informed the Plaintiff: I had to but I can call him right now, I can call him and stop it if you and I can work something out.

29.   On November 21, 2007, Plaintiff asked Defendant V&K's representative if they were suing her.

30.   On November 21, 2007, Defendant V&K's representative told the Plaintiff that if she wanted to work something out then he could stop all of this right now.

31.   On November 21, 2007, Defendant V&K's representative told the Plaintiff that they only reason they were doing this was because Chase Bank said she was refusing to work this out voluntarily.

32.     On November 21, 2007, Plaintiff asked Defendant V&K's representative if she could make a minimum payment to stop the sheriff from coming to her house.

33.     On November 21, 2007, Defendant V&K's representative stated: I see you have a checking account; have you had the checking account more than a week; I can allow you to post date a check as long as you make a payment this month.

34.     On November 21, 2007, Plaintiff told Defendant V&K's representative that she did not want to post date a check.

35.     On November 21, 2007, Defendant V&K's representative informed the Plaintiff that I just spoke with them so the only thing we can do to help you out here is if you set up a payment dated for some time this month and the minimum is $100.00.

36.     On November 21, 2007, Plaintiff asked Defendant V&K's representative if they would accept $25.00.

37.     On November 21, 2007, Defendant V&K's representative stated to the Plaintiff: No, like I just told you they wanted to break the balance up over twelve months, which was going to be over $300.00 per month but I told them that you could not afford that.

38.  On November 21, 2007, Defendant V&K's representative told the Plaintiff
     that $50.00 of it has to go to the sheriff so they were only getting $50.00, so
     the minimum is $100.00.

39.  On November 21, 2007, Plaintiff told Defendant V&K's representative that
     she did not want to post date a check because she didn't want it to bounce
     and asked if she could have additional time to pay because she was not
     refusing to pay but she just didn't have the money.

40.  On November 21, 2007, Plaintiff asked Defendant V&K's representative if
     there was any way they could give her a couple of months to pay.

41.  On November 21, 2007, Defendant V&K's representative told the Plaintiff:
     No, you know the last time you made a payment on this; they have given
     you plenty of time this is why it's in the judge's hands now; the judge isn't
     going to put you in jail, all he is going to do is have it taken right out of your
     pay check involuntarily; they are going to place a lien on your property.

42.  On November 21, 2007, Defendant V&K's representative told the Plaintiff:
     Let me tell you I don't want your pay check to be garnished because you
     know they take 18% of your gross pay, so if you are only making $300.00
     per week they are going to end up taking $400.00 per month; I'll let you post
     date a check for the 30th of this month; I'll let you pay $100.00 per month for
     the next six months so they don't take $400.00 per month until this thing is

paid off; I'll take a series of checks for six months; there's five weeks in

December so you'd only have to put $20.00 per week in your checking

account; every time  you get paid you put $20.00 a week in there and that's

better than them taking $100.00 every time you get paid involuntarily and

there'll be no lien on your property because that lien they put on your

property accrues interest.

43.     On November 21, 2007, Plaintiff told Defendant V&K's representative that

        if she post dated a check and they attempted to take the money and there was

        no money in the account, then it would cause them a bit of a hardship.

44.     On November 21, 2007, Defendant V&K's representative asked the Plaintiff

        if she had a credit card or if someone she knew had a credit card because she

        had to make sure that $100.00 was in the account because they already

        verified that she had a mortgage with Suntrust Mortgage and they could put

        a lien on it and they already verified her employment for an administrative

        wage garnishment.

45.     On November 21, 2007, Plaintiff told Defendant V&K's representative that

        she would have to go ask somebody to borrow the money.

46.     On November 21, 2007, Defendant V&K's representative stated to the

        Plaintiff: Yes, and this is what I am saying you have to do because right now

        we need to take this check because I need to call him and tell him to stop so

what you should do is post date a check for $100.00 for the 30th and then go

find someone to borrow the $100.00 and put it in the bank.

47.   On November 21, 2007, Defendant V&K's representative told the Plaintiff:
We are representing Chase, if you call Chase they're going to tell you that I
am the one that has to speak on your behalf to get them to stop, if not they
are going to say come up with the full amount and we will see you in court;
Chase is not happy; Chase is not going to be happy that I let you get off with
just paying $100.00.

48.   On November 21, 2007, Defendant V&K's representative told the Plaintiff:
they hire us to take you to court; I'm just going to write up a big hardship
letter to justify why we're not taking you to court.

49.   On November 21, 2007, Plaintiff asked Defendant V&K's representative if
she could call him back.

50.   On November 21, 2007, Defendant V&K's representative told the Plaintiff: I
don't think you have time to be honest with you, I mean last thing I need you
to do let's say you call me back in two hours but they already set up an
administrative wage garnishment, it's too late for me to accept that $100.00;
there's going to be no way I can stop the wage garnishment.

51. On November 21, 2007, Defendant V&K's representative told the Plaintiff I am just trying to help you out that's all and letting you know what's going on.

52. On November 21, 2007, Defendant V&K's representative told the Plaintiff that he would just let them know that she did her best and she just couldn't do anything and that they are going to have to place a lien on the home.

53. On November 21, 2007, Defendant V&K's representative asked the Plaintiff how much money she made per week so he could tell her how much they were going to take out of her paycheck.

54. On November 21, 2007, Defendant V&K's representative told the Plaintiff that they were going to take 18% of her gross pay; they're only going to end up taking $86.40 a week and that is going to be almost $400.00 a month they're going to take and I don't know how you are going to pay that mortgage.

55. On November 21, 2007, Defendant V&K's representative stated to the Plaintiff: when they have a lien on your home and you fall behind on the mortgage they're going to take your home.

56. As of November 21, 2007, no lawsuit had been filed against the Plaintiff for the debt.

57.    As of November 21, 2007, no judgment had been issued against the Plaintiff for the debt.

58.    As of November 21, 2007, Defendant V&K did not have the legal right or authority to garnish the Plaintiff's wages.

59.    As of November 21, 2007, Defendant V&K did not have the legal right or authority to place a lien on the Plaintiff's residence.

60.    The Defendant knew or should have known that its actions violated the FDCPA.

61.    At all times pertinent hereto, Defendant V&K was acting by and through its agents, servants, and/or employees, who were acting within the scope and course of their employment, under the direct supervision and control of V&K.

62.    At all times pertinent hereto, the conduct of the Defendant was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

63.    Plaintiff sustained actual damages, including but not limited to, physical pain, emotional and mental pain, anguish, anger, anxiety, fear, and frustration.

64.    As a result of the Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, physical, emotional, and mental pain

and anguish, anger, anxiety, and frustration and she will continue to suffer same for an indefinite time in the future, all to her great detriment and loss.

## VI. CAUSES OF ACTION

65.   Defendant V&K violated the FDCPA, 15 U.S.C. § 1692 *et seq.*

66.   Defendant V&K violated the FDCPA ,15 U.S.C. § 1692e.

67.   Defendant V&K violated the FDCPA ,15 U.S.C. § 1692e(2)(A).

68.   Defendant V&K violated the FDCPA ,15 U.S.C. § 1692e(3).

69.   Defendant V&K violated the FDCPA ,15 U.S.C. § 1692e(4).

70.   Defendant V&K violated the FDCPA, 15 U.S.C. § 1692e(5).

71.   Defendant V&K violated the FDCPA ,15 U.S.C. § 1692e(10).

72.   Defendant V&K violated the FDCPA ,15 U.S.C. § 1692f.

73.   As a result of the foregoing violations of the FDCPA, Defendant V&K is liable to Plaintiff for actual damages, statutory damages, and attorney fees and costs in accordance with 15 U.S.C. § 1692k.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff My Viet Le prays that judgment be entered against Defendant Valentine & Kebartas, Inc. for the following:

A.   Award Plaintiff actual damages in an amount determined by a jury;

B.   Award Plaintiff statutory damages of $1,000.00;

C.    Award Plaintiff costs of this action, including reasonable attorneys'

fees and expenses; and

D.    Such other and further relief that the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a Trial by Jury on all Issues.

Dated: December 5, 2007.

Respectfully submitted,

LAW OFFICE OF LISA D. WRIGHT, LLC

By:
Lisa D. Wright
Attorney for Plaintiff
Georgia State Bar No. 268781

235 Peachtree Street, NE
Suite 888
Atlanta, Georgia 30303
404-588-1181 (Office)
404-588-1182 (Fax)
attorneywright@prodigy.net